CASE NO. 17-50088

IN THE

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### IVAN ARNOLD,
an individual, on behalf of himself
and all others similarly situated,

*Plaintiff - Appellee,*

v.

### HOMEAWAY, INCORPORATED,

*Defendant - Appellant.*

On appeal from the
United States District Court
for the Western District of Texas

## BRIEF OF APPELLANT

SCOTT DOUGLASS & MCCONNICO LLP
Jane M.N. Webre
  Texas Bar No. 21050060
David D. Shank
  Texas Bar No. 24075056
303 Colorado St., Suite 2400
Austin, Tex. 78701
T: 512-495-6300

MORGAN, LEWIS & BOCKIUS LLP
Bryan Killian
Stephanie Schuster
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
T: 202-739-3000

J. Warren Rissier
300 South Grand Ave., 22nd Floor
Los Angeles, Cal. 90071
T: 213-612-2500

April 26, 2017

*i*

CASE NO. 17-50088

IN THE

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### IVAN ARNOLD,
an individual, on behalf of himself
and all others similarly situated,
*Plaintiff - Appellee,*

v.

## HOMEAWAY, INCORPORATED,
*Defendant - Appellant.*

_____

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

- Ivan Arnold (Plaintiff-Appellee)

- Michael A. Bowse, BROWNE GEORGE ROSS LLP (counsel for Mr. Arnold)

- Keith J. Wesley, BROWNE GEORGE ROSS LLP (counsel for Mr. Arnold)

CERTIFICATE OF INTERESTED PERSONS                              *ii*

- Daniel H. Byrne, FRITZ, BYRNE, HEAD & FITZPATRICK, PLLC (counsel for Mr. Arnold)

- HomeAway, Inc. (a dissolved Delaware corporation, which was merged into Expedia, Inc., a publicly traded Delaware corporation) (Defendant-Appellant)

- Expedia, Inc. (the publicly traded Delaware corporation into which HomeAway, Inc., has merged)

- Stephen E. McConnico, SCOTT DOUGLASS & MCCONNICO LLP (counsel for HomeAway)

- Jane M.N. Webre, SCOTT DOUGLASS & MCCONNICO LLP (counsel for HomeAway)

- David D. Shank, SCOTT DOUGLASS & MCCONNICO LLP (counsel for HomeAway)

- Bryan Killian, MORGAN LEWIS & BOCKIUS LLP (counsel for HomeAway)

- Stephanie Schuster, MORGAN LEWIS & BOCKIUS LLP (counsel for Home-Away)

- J. Warren Rissier, MORGAN LEWIS & BOCKIUS LLP (counsel for Home-Away)

/s/ Bryan Killian

Attorney of record
for HomeAway, Inc.

April 26, 2017

# STATEMENT REGARDING ORAL ARGUMENT

Oral argument would be helpful in this case, given the importance of the legal questions presented.

# CONTENTS

*i*    Certificate of Interested Persons

*iii*   Statement Regarding Oral Argument

*vi*   Authorities

*x*    Glossary

1    Jurisdiction

2    Statement of Issues Presented

3    Relevant Statute—9 U.S.C. § 2

4    Introduction

6    Statement of the Case

6    I.   HomeAway provides vacation-rental services to subscribers like Mr. Arnold.

6    II.  Mr. Arnold agreed to HomeAway's April 2016 Terms & Conditions.

7    III. The district court refused to compel Mr. Arnold to arbitrate his claims against Home-Away.

10   Summary of Argument

12   Argument

**12**  I.   An arbitrator must resolve Mr. Arnold's challenge to the contract.

**12**  A.   The FAA requires arbitration of many threshold questions.

**13**  B.   Mr. Arnold's challenge had to be arbitrated because the parties agreed to delegate it to an arbitrator and the challenge is not arbitration-specific.

**16**  II.  California law applies to Mr. Arnold's challenge.

**20**  III. The FAA preempts state-law rules that invalidate arbitration agreements, but not other contracts, that can be unilaterally modified or terminated.

**21**  A.   The FAA preempts state-law rules that are hostile to arbitration.

**22**  B.   The rule applied by the district court is preempted.

**26**  IV.  The arbitration agreement is enforceable under Texas's general contract law.

**33**  Conclusion

**34**  Certificate of Compliance

**35**  Certificate of Service

# AUTHORITIES

CASES

*Amateur Athletic Union, Inc. v. Bray*, 499 S.W.3d 96 (Tex. App. 2016)
>    *page 30*

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)
>    *pages 21, 24*

*Aviles v. Russell Stover Candies, Inc.*, 559 F. App'x 413 (5th Cir. 2014)
>    *page 15*

*Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719 (5th Cir. 2003)
>    *page 17*

*Betts v. SGE Mgmt.*, 402 F. App'x 475 (11th Cir. 2010)
>    *page 31*

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006)
>    *pages 12, 13*

*Carey v. 24 Hour Fitness, Inc.*, 669 F.3d 202 (5th Cir. 2012)
>    *page 23*

*Cates v. Creamer*, 431 F.3d 456 (5th Cir. 2005)
>    *page 12*

*Cleveland Constr. v. Levco Constr.*, 359 S.W.3d 843 (Tex. App. 2012)
>    *page 30*

*Cooper v. WestEnd Cap. Mgmt.*, 832 F.3d 534 (5th Cir. 2016)
>    *page 14*

*Dorfman v. Max Int'l.*, No. 05-10-00776-CV, 2011 WL 1680070 (Tex. App. May 5, 2011)
>    *page 30*

*Edwards v. Conn Appliances, Inc.*, No. 3:14-CV-3529-K, 2015 WL 1893107 (N.D. Tex. Apr. 24, 2015)
>    *page 30*

*FDIC v. Abraham*, 137 F.3d 264 (5th Cir. 1998)
>    *pages 26, 31*

*First Options, Inc. v. Kaplan*, 514 U.S. 938 (1995)
>    *page 13*

AUTHORITIES                                                              *vii*

*Gables Cent. Constr., Inc. v. Atrium Cos.*, No. 05-07-00438-CV, 2009 WL 824732 (Tex. App. Mar. 31, 2009)
    *page 31*

*Gross v. GGNSC Southaven, LLC*, 817 F.3d 169 (5th Cir. 2016)
    *page 21*

*Henry & Sons Constr. v. Campos*, 510 S.W.3d 689 (Tex. App. 2016)
    *page 31*

*Hobzek v. HomeAway.com, Inc.*, No. 16-1058, 2017 WL 476748 (W.D. Tex. Feb. 3, 2017)
    *page 14*

*In re 24R, Inc.*, 324 S.W.3d 564 (Tex. 2010)
    *pages 25, 28*

*In re AdvancePCS Health L.P.*, 172 S.W.3d 603 (Tex. 2003)
    *pages 22, 29*

*In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002)
    *page 22*

*In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419 (Tex. 2010)
    *page 23*

*In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672 (Tex. 2006)
    *page 29*

*J.M. Davidson Inc. v. Webster*, 128 S.W.3d 223 (Tex. 2003)
    *page 22*

*Kubala v. Supreme Prod. Servs.*, 830 F.3d 199 (5th Cir. 2016)
    *page 12*

*Lefoldt for Natchez Reg'l Med. Ctr. Liquidation Trust v. Horner, LLP*, — F.3d —, 2017 WL 1326241 (5th Cir. Apr. 11, 2017)
    *pages 15, 16, 24*

*Lizalde v. Vista Quality Markets*, 746 F.3d 222 (5th Cir. 2014)
    *pages 24, 25*

*Mendez v. New Bell Gen. Servs.*, 727 F. Supp. 2d 585 (W.D. Tex. 2010)
    *page 30*

*Morrison v. Amway*, 517 F.3d 248 (5th Cir. 2008)
    *pages 2, 22, 22*

*Mortensen v. Bresnan Commc'ns*, 722 F.3d 1151 (9th Cir. 2013)
    *page 24*

*Nelson v. Watch House Int'l*, 815 F.3d 190 (5th Cir. 2016)
    *page 23*

*Obra Homes, Inc. v. Gonzalez,*
No. 13-03-00644-CV, 2010 WL
2224662 (Tex. App. June 3, 2010)
    *page 30*

*Olander v. Compass Bank,*
363 F.3d 560 (5th Cir. 2004)
    *pages 27, 28*

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.,*
687 F.3d 671 (5th Cir. 2012)
    *page 14*

*Pollard v. Steffens,*
343 S.W.2d 234 (Tex. 1961)
    *page 24*

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
388 U.S. 395 (1967)
    *page 12*

*Ramirez v. 24 Hour Fitness, Inc.,*
549 F. App'x 262 (5th Cir. 2013)
    *page 25*

*Rent-A-Center, Inc. v. Jackson,*
561 U.S. 63 (2010)
    *pages 12, 13*

*Reyna v. Int'l Bank of Commerce,*
839 F.3d 373 (5th Cir. 2016)
    *page 13*

*Seim v. HomeAway, Inc.,*
Case No. 1:16-cv-00479-YL, Dkt.
No. 30 (W.D. Tex. Jan. 18, 2017)
    *Page 19*

*Stride Staffing v. Holloway,*
No. 05-14-00811, 2015 WL 4554341
(Tex. App. July 29, 2015)
    *page 30*

*Tanoury v. Symphony Serv. Corp.,*
No. 12-1142, 2013 WL 705121 (N.D.
Tex. Feb. 5, 2013)
    *page 30*

*U.S. ex rel. D.R. Swindle Constr. v. Travelers Cas. & Sur.,* No. 7:08-CV-00174-O, 2009 WL 1904852 (N.D.
Tex. July 1, 2009)
    *page 31*

*Vanegas v. Am. Energy Servs.,*
302 S.W.3d 299 (Tex. 2009)
    *page 27*

*Vista Quality Mkts. v. Lizalde,*
438 S.W.3d 114 (Tex. App. 2014)
    *page 31*

*Wynne v. Am. Exp. Co.,*
No. 2:09-CV-00260, 2010 WL
3860362 (E.D. Tex. Sept. 30, 2010)
    *Page 30*

## FEDERAL STATUTES

9 U.S.C. § 2

*pages 3, 21*

9 U.S.C. § 16(a)(1)(B)
    *page 1*

28 U.S.C. § 1332(d)(2)
    *page 1*

## OTHER AUTHORITIES

CORBIN ON CONTRACTS § 6.12
    *page 28*

Restatement (Second) Contracts
§ 77
    *page 27*

Tex. Const. art. I, § 16
    *page 24*

# GLOSSARY

| Abbreviation / Acronym | Expansion and additional explanation |
|---|---|
| AAA | American Arbitration Association |
| FAA | Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* |
| Terms & Conditions | HomeAway's April 2016 Terms & Conditions |
| 2016 Terms & Conditions | |

# JURISDICTION

The district court has subject-matter jurisdiction over this putative class action because the named plaintiff alleges that at least one member of the proposed class is a citizen of a state different than HomeAway, Inc. (or its successor by merger, Expedia, Inc.) and that the claims of the proposed class exceed $5,000,000 in the aggregate. *See* 28 U.S.C. § 1332(d)(2).

The district court entered an order denying HomeAway's motion to compel arbitration on January 10, 2017, ROA.284, and HomeAway timely noticed this appeal on January 31, 2017, ROA.292. This Court has appellate jurisdiction under 9 U.S.C. § 16(a)(1)(B).

# STATEMENT OF ISSUES PRESENTED

HomeAway operates websites on which individuals who own or manage vacation properties, like Ivan Arnold, offer to rent those properties on a short-term basis to travelers. Mr. Arnold sued HomeAway for its business decision to charge fees to travelers for booking reservations on its websites. HomeAway moved to compel arbitration in accordance with the arbitration agreement embedded within the Terms & Conditions to which Mr. Arnold agreed. The district court held the arbitration agreement unenforceable as illusory under Texas law because a generally applicable, non-arbitration provision gives HomeAway authority to modify the Terms & Conditions. This appeal presents four questions:

1. Did the district court err by resolving a challenge to the enforceability of the arbitration agreement when the parties agreed to delegate that decision to an arbitrator, and the challenge attacked the validity of the entire contract?

2. Did the district court err by applying Texas law to the arbitration agreement, when the agreement includes a choice-of-law clause that chooses California law?

3. Does the FAA preempt the rule the district court applied—which applies a heightened standard for enforcing arbitration agreements that does not apply to other types of contracts—just because one party could (but did not actually) modify it?

4. Have Texas courts limited the rule of law held to invalidate the arbitration agreement in *Morrison v. Amway*, 517 F.3d 248 (5th Cir. 2008), to only standalone arbitration agreements?

# RELEVANT STATUTE

## 9 U.S.C. § 2

### Validity, irrevocability, and enforcement of agreements to arbitrate

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

# INTRODUCTION

Flexible and uniform terms and conditions are how companies regulate relationships with users across the United States, as the costs of negotiating, renegotiating, and managing millions of individual contracts would be enormous. Similar concerns have caused arbitration agreements to become ubiquitous as well. The benefits of terms and conditions and arbitration agreements do not run only to businesses; they keep users' costs low, treat similar users the same, and ensure that terms and conditions stay current with changes in the law.

Like most Internet companies, HomeAway writes Terms & Conditions for its websites. To keep them uniform and current, HomeAway reserves authority to modify the Terms & Conditions by posting changes on its websites. The Terms & Conditions also include a standard, bilateral arbitration agreement.

Ivan Arnold is a HomeAway subscriber. He lists two properties (for rent to vacation travelers) on HomeAway's website, subject to HomeAway's Terms & Conditions. Mr. Arnold is trying to litigate a dispute with HomeAway over a business decision it implemented last year, and which Mr. Arnold contends results in fewer bookings at his properties through HomeAway's website. But he refuses to arbitrate his claims because he contends HomeAway's authority to modify the Terms & Conditions renders them all—including the embedded ar-

bitration agreement—illusory, invalid, and unenforceable, even though he continues to subscribe to and profit from HomeAway's services.

The district court made three mistakes in its analysis of Mr. Arnold's challenge. The court presumed the challenge did not have to be arbitrated; then applied Texas law; and at last, invalidated HomeAway's arbitration agreement simply because HomeAway could modify it (even though HomeAway didn't). The judgment below depends on each of those decisions being sustained on appeal.

Each decision is wrong as a matter of law. Texas does not invalidate modifiable arbitration agreements (despite some decisions of this Court to the contrary), and if it did, the FAA would preempt that state-law rule as one that impermissibly discriminates against arbitration. This Court doesn't have to answer that question, though, because Texas law doesn't apply to Mr. Arnold's challenge; California law applies, and that state clearly upholds modifiable arbitration agreements, especially when they have not been modified. But the Court doesn't have to answer that question, either, because the merits of Mr. Arnold's challenge can't be resolved by a court; they must be arbitrated because the parties agreed to delegate that decision to an arbitrator, and the challenge implicates the enforceability of the entire Terms & Conditions.

However this Court comes at it, the judgment below must be reversed.

# STATEMENT OF THE CASE

## I. HOMEAWAY PROVIDES VACATION-RENTAL SERVICES TO SUBSCRIBERS LIKE MR. ARNOLD.

HomeAway operates websites on which individuals who own or manage residential vacation properties list those properties for rent on a short-term basis to travelers. ROA.7. Owners pay for listing properties, either by purchasing subscriptions or by paying HomeAway a commission for each booking. ROA.8, 12, 27, 127. For many years, Ivan Arnold has listed two properties on HomeAway's websites. ROA.11. (His complaint mentions only one, but it is undisputed he has a second. ROA.112, 128, 132–33.) He has a subscription for each—one he renewed in February 2016, the other in May 2016. ROA.128, 268.

## II. MR. ARNOLD AGREED TO HOMEAWAY'S APRIL 2016 TERMS & CONDITIONS.

HomeAway has Terms & Conditions for its websites and services. So that the Terms & Conditions are flexible and uniform for all users, HomeAway "reserve[s] the right … to amend these Terms, in whole or in part, at any time. Notification of any amendment will be posted on the Site by the indication of the last amendment date at the top of these Terms and will be effective immediately." ROA.169.

HomeAway amended its Terms & Conditions in April 2016. That version contains an arbitration agreement. ROA.165–66. Arbitrations "will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA Consumer Rules." ROA.165. The 2016 Terms & Conditions also include a choice-of-law clause: "These Terms are governed by the Federal Arbitration Act, federal arbitration law, and for reservations made by U.S. residents, the laws of the state in which your billing address is located, without regard to principles of conflicts of laws." ROA.168–69.

Users must agree to HomeAway's latest Terms & Conditions when they renew their subscriptions. ROA.11, 55, 128–30, 142–43. The April 2016 Terms & Conditions went into effect between the two times Mr. Arnold renewed his HomeAway subscriptions in 2016. ROA.128–30, 135–40, 144–45. Mr. Arnold agreed to the April 2016 Terms & Conditions when he renewed his second subscription in May 2016, so, as the district court found, that version is controlling on the question whether Mr. Arnold's dispute must be arbitrated. ROA.286–87.

## III.  THE DISTRICT COURT REFUSED TO COMPEL MR. ARNOLD TO ARBITRATE HIS CLAIMS AGAINST HOMEAWAY.

In February 2016, HomeAway began charging travelers fees for booking reservations on its websites. ROA.285. That was a business decision, which HomeAway announced, advertised, and explained nearly six months earlier. Mr. Arnold is unhappy with that business decision. He thinks the fees cause fewer

travelers to book reservations. ROA.8 ¶ 5. Mr. Arnold alleges that he renewed his subscriptions for one of his properties expecting that HomeAway would continue to be free for travelers—which, given that he renewed his subscription for his other property *after* filing suit, is untenable. *See* ROA.17 ¶ 44(a) (alleging that Plaintiff "would not have subscribed" if HomeAway had "been charging fees to travelers"); ROA.26 ¶ 75 (alleging that if he had known HomeAway would charge fees to travelers, "Plaintiff would have not renewed his subscription"); ROA.17 ¶ 39 (alleging that, "[a]t no time since renewing his subscription on February 2, 2016, has Plaintiff consented to any change in HomeAway's fees or rates"); ROA.143. Nevertheless, Mr. Arnold maintains that HomeAway's decision breaches its Terms & Conditions, violates HomeAway's duty of good faith and fair dealing, etc. ROA.23–36. He sued HomeAway, for himself and on behalf of a class of other HomeAway subscribers.

HomeAway moved to compel arbitration in accordance with the 2016 Terms & Conditions. ROA.115–19. Mr. Arnold opposed. He contends that an earlier version of the Terms & Conditions applies, a version without arbitration requirements. ROA.257–62. He also challenges the validity and enforceability of the 2016 Terms & Conditions, arguing that it is illusory and unenforceable because, under Texas law, HomeAway's authority to modify any terms or conditions renders the entire "Terms & Conditions, including the arbitration provision of those Terms," illusory and unenforceable. ROA.256–57. Mr. Arnold

urged the district court (not an arbitrator) to resolve his challenge on the merits; he disputes HomeAway's assertion that the arbitration agreement, by incorporating the AAA rules, requires an arbitrator to resolve the contract challenges he raises. ROA.248–52.

The district court denied HomeAway's motion. ROA.284. The court agreed with HomeAway that the arbitration provision of the 2016 Terms & Conditions applies because Mr. Arnold affirmatively agreed to the 2016 Terms & Conditions when he renewed his second subscription in May 2016. ROA.286–87. Despite the parties' extensive briefing on whether Mr. Arnold's challenge must be decided by an arbitrator (ROA.117, 248–52, 274–78), the district court's opinion says nothing about the issue. The court seems to have presumed it could resolve Mr. Arnold's challenge on the merits.

And on the merits, the district court rejected HomeAway's application of the choice-of-law clause as selecting the law of California (where Mr. Arnold is billed). The court read the choice-of-law clause narrowly as selecting that law only for "claims" in connection with a "specific [vacation-rental] reservation." ROA.287–89. Because Mr. Arnold complains about HomeAway's business decisions, not a specific reservation, the district court applied Texas law and held that HomeAway's unexercised authority to modify the arbitration agreement renders it illusory and unenforceable. ROA.289–90.

# SUMMARY OF ARGUMENT

The FAA requires an arbitrator to resolve any challenge that questions the validity of a contract containing an arbitration agreement. Here, HomeAway and Mr. Arnold went further than the FAA requires and delegated to an arbitrator the power to resolve all threshold questions of arbitrability, including questions about the existence, scope, and validity of their arbitration agreement. In accordance with that division of labor, an arbitrator had to resolve Mr. Arnold's challenge to the parties' agreement. He claims the agreement is illusory and unenforceable because HomeAway could unilaterally modify it. There is no way to frame that challenge as specific to either the arbitration agreement or the delegation clause; it is necessarily a broadside on the entire Terms & Conditions. The district court, therefore, erred as a matter of law when resolving Mr. Arnold's challenge on the merits.

That's the straightest path to reversal. For if the district court was allowed to decide Mr. Arnold's challenge, this Court must answer one, two, or even three more questions. The first relates to the district court's interpretation of the choice-of-law clause in the Terms & Conditions. The district court held that the parties chose to apply California law only to disputes about specific vacation-rental reservations. That misreads the contract; the plain text of the choice-of-law clause applies California law more broadly—to disputes about the validity,

enforceability, and interpretation of the Terms & Conditions, including the arbitration agreement. California law easily disposes of Mr. Arnold's challenge. California enforces modifiable arbitration agreements.

The second question relates to Texas law, assuming it applies. The district court's ruling invalidating the parties' arbitration agreement is premised on decisions where this Court, purporting to apply Texas law, held that an arbitration agreement is illusory and unenforceable whenever one party can unilaterally modify it (whether or not that party has done so). That rule of decision is preempted by the FAA because it applies a heightened standard for arbitration agreements that doesn't apply to ordinary contracts.

The third question relates to the continuing validity of this Court's decisions under Texas law, which is not so hostile to arbitration. Under Texas law, neither an ordinary contract nor an arbitration agreement embedded within a broader contract is invalid as illusory simply because one party can unilaterally modify it.

# ARGUMENT

This Court reviews rulings on motions to compel arbitration, as well as choice-of-law determinations, *de novo. Kubala v. Supreme Prod. Servs.*, 830 F.3d 199, 201 (5th Cir. 2016); *Cates v. Creamer*, 431 F.3d 456, 462 (5th Cir. 2005).

## I. AN ARBITRATOR MUST RESOLVE MR. ARNOLD'S CHALLENGE TO THE CONTRACT.

### A. THE FAA REQUIRES ARBITRATION OF MANY THRESHOLD QUESTIONS.

Agreements to arbitrate often are embedded within contracts that cover other topics. Challenges to the validity of these embedded arbitration agreements can attack either the arbitration clause alone or the entire contract. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006). The nature of a challenge determines whether a court can resolve it: courts can resolve arbitration-specific challenges, and broader challenges must be referred to arbitration. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04 (1967). This division of labor comes from the FAA, which declares every arbitration agreement valid *"without mention* of the validity of the contract in which it is contained." *Rent-A-Center, Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (emphasis in

original). In effect, an arbitration agreement is "severable" from the contract it is embedded in. *Buckeye*, 546 U.S. at 445–46.

Courts are further limited when a "delegation clause" is embedded in an arbitration agreement. A delegation clause is an additional agreement to arbitrate "gateway questions of arbitrability" that a court ordinarily would decide. *Rent-A-Center*, 561 U.S. at 68–69; *see First Options, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). A delegation clause is itself an arbitration agreement and so is severable from the broader arbitration agreement it is embedded in. *Rent-A-Center*, 561 U.S. at 71–72. So, when a delegation clause exists, courts can resolve only delegation-clause-specific challenges; challenges to the arbitration agreement that contains the delegation clause (and challenges to the broader contract that contains them both) must be referred to arbitration. *Id.* As a result, "[i]f there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 378 (5th Cir. 2016).

B.    MR. ARNOLD'S CHALLENGE HAD TO BE ARBITRATED BECAUSE THE PARTIES AGREED TO DELEGATE IT TO AN ARBITRATOR AND THE CHALLENGE IS NOT ARBITRATION-SPECIFIC.

There is a delegation clause in the Terms & Conditions, so this case is one of the "almost all cases" where a "the motion to compel arbitration should be

granted." *Id.* The district court, however, said nothing about the delegation clause. Perhaps the court silently agreed with Mr. Arnold's contention that there is no delegation clause. That contention lacks merit.

Here, the arbitration agreement in the Terms & Conditions expressly adopts the AAA rules. ROA.165 ("Arbitrations will be conducted by the American Arbitration Association (AAA) under its rules, including the AAA Consumer rules."). And the rules of the AAA contain a delegation clause; they state that questions about "the existence, scope, or validity of the arbitration agreement" will be decided in arbitration. ROA.199. Parties who expressly adopt the AAA rules in their arbitration agreement clearly and unmistakably incorporate that particular rule as a delegation clause in their arbitration agreement. *See Petrofac, Inc. v. Dyn-McDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (collecting cases in accord from the First, Second, Eighth, Tenth, Eleventh, and Federal Circuits); *see also Cooper v. WestEnd Cap. Mgmt.*, 832 F.3d 534, 546 (5th Cir. 2016) (same for JAMS rules). The incorporation of AAA rules is "clear and unmistakable" evidence of the parties' intent to arbitrate challenges to the validity of the arbitration agreement. *See, e.g., Petrofac*, 687 F.3d at 675; *Hobzek v. HomeAway.com, Inc.*, No. 16-1058, 2017 WL 476748, at *4 (W.D. Tex. Feb. 3, 2017) (compelling arbitration of plaintiff's argument that the very same arbitration agreement at issue in this case was invalid and unenforceable as illusory be-

cause, by incorporating the AAA rules, the parties clearly and unmistakably intended such questions be arbitrated).[1]

And even if the AAA rules didn't amount to a delegation clause, Mr. Arnold's challenge still must be arbitrated. The direct focus of Mr. Arnold's challenge is not the parties' arbitration agreement, but rather the separate, generally applicable provision granting HomeAway authority to modify *any* provision in the Terms & Conditions. *See* ROA.169. As Mr. Arnold acknowledges, the only possible way HomeAway's modification authority would invalidate the arbitration agreement is if it also invalidated the entire "Terms & Conditions, *including the arbitration provision of those Terms.*" ROA.257 (emphasis added). The modification authority, he asserts, renders everything "illusory and therefore invalid" and "unenforceable." ROA.253; *accord* ROA.243, 257.

This is not an arbitration-specific challenge a court can resolve. Courts must compel arbitration when the validity of an arbitration agreement is attacked by way of a non-arbitration provision that is *"generally* applicable" to the entire contract. *Lefoldt for Natchez Reg'l Med. Ctr. Liquidation Trust v. Horner, LLP,*

---

[1]     *See also Aviles v. Russell Stover Candies, Inc.*, 559 F. App'x 413, 415 (5th Cir. 2014) (affirming order compelling arbitration of threshold claim that modification power rendered arbitration agreement "invalid or unenforceable as an illusory contract" because the agreement included a "severable" delegation clause, which the plaintiff did not specifically challenge).

— F.3d —, 2017 WL 1326241, at *8 (5th Cir. Apr. 11, 2017) (emphasis in original). For, "a claim that the [general provision] necessarily applies to the arbitration provision is not a claim that the [general provision] applies specifically to the agreement to arbitrate in a way that differs from its general effect." *Id.*

It makes no difference that Mr. Arnold focused his challenge on the modification provision's *application to* the arbitration agreement. The substance of a challenge, not the framing of it, is what counts. A challenge based on generally applicable, non-arbitration provisions, like the modification provision, "is not, in actuality, a challenge directed specifically to the agreement to arbitrate." *Id.* at *8. (And even if Mr. Arnold's framing of the challenge were relevant, he never specifically challenged the delegation clause.)

Accordingly, either because of the delegation clause or because of the default division of labor between courts and arbitrators, Mr. Arnold's challenge to arbitration must be arbitrated.

## II. CALIFORNIA LAW APPLIES TO MR. ARNOLD'S CHALLENGE.

Assuming a court (rather than an arbitrator) may resolve Mr. Arnold's challenge, this Court must decide which state's law applies to that challenge. The choice-of-law clause in the Terms & Conditions selects California law for Mr. Arnold's objection to the validity and enforceability of the arbitration agree-

ment: "These Terms are governed by the Federal Arbitration Act, federal arbitration law, and *for reservations made by U.S. residents, the laws of the state in which your billing address is located.*" ROA.168–69 (emphasis added). Here, Mr. Arnold's billing address is in California. *See* ROA.128.

The district court did not apply California law. It held that the choice-of-law clause "does not direct which state's laws controls in the circumstances presented in this lawsuit." ROA.287. In the court's view, "*[t]his lawsuit* is about HomeAway's policies and practices, not a specific reservation made by Arnold." ROA.287 (emphasis added). In other words, the district court read the choice-of-law clause as selecting California law only for lawsuits about specific vacation-rental reservations.

What Mr. Arnold's "*lawsuit* is about" and, accordingly, which laws "govern[] Arnold's *claims,*" ROA.287 (emphases added), are beside the point. The choice-of-law clause identifies the laws that govern *the Terms*—their interpretation, validity, and enforceability. *See, e.g., Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726–27 (5th Cir. 2003). The clause "does not purport to encompass all *disputes* between the parties." *Id.* (emphasis added); *see also* ROA.169 (use of HomeAway's website "is unauthorized in any jurisdiction that does not *give effect* to all provisions of these Terms, including, without limitation, this [choice-of-law] paragraph") (emphasis added).

The sole subject of the choice-of-law clause is "These Terms," *i.e.* the Terms & Conditions. ROA.168–69. That one subject is linked to three items on a list of applicable laws by one prepositional phrase. The "Terms *are governed by* the Federal Arbitration Act"; they "*are governed by* … federal arbitration law"; and "for reservations made by U.S. residents," they "*are governed by* … the laws of the state in which your billing address is located." For each item on the list, the subject—"These Terms"—never changes.

The district court's interpretation breaks the linkage and creates a new subject ("reservations") for only the last item on the list. That was error. The phrase "for reservations made by U.S. residents" does not restrict the state-law component of the choice-of-law provision to disputes related to *specific reservations*. Read in context, that phrase restricts the state-law component of the choice-of-law provision to *U.S. residents*. Reservations are HomeAway's business—it facilitates reservations between travelers and property owners or managers (a.k.a. "members") through websites. *See* ROA.147 (HomeAway provides a website to facilitate "listing a property or renting a property"); ROA.157 (a "reservation" is a transaction that "both the traveler and member accept"). Because HomeAway's reservation services are web-based, they can be accessed by users anywhere in the world. The choice-of-law clause makes clear that the Terms & Conditions are not subject to foreign law. Select federal laws always govern, and

the laws of a user's home "state" govern, as well, *only if* that "state" is in the U.S.

Regardless, were the district court correct in concluding that the subject of a *dispute* between the parties is what drives the application of the choice-of-law clause, California law still applies in this case. Mr. Arnold complains about fees HomeAway charges travelers *for reservations*. On HomeAway's websites, reservations are made between travelers and subscribers like Mr. Anorld—*i.e.*, they are transactions that "*both* the traveler and member accept." ROA.157 (emphasis added). Since Mr. Arnold is a U.S. resident, his claims necessarily are claims "for reservations made by U.S. residents." Thus, again, Mr. Arnold's billing address in California controls, and California law applies.[2]

And California law shuts him down. In California, an agreement authorizing one party to modify the agreement's terms does not render the agreement illusory, invalid, or unenforceable. California courts monitor modifications after the fact, not before; a party's exercise of modification powers is limited by an im-

---

2   In a virtually identical case, this choice-of-law issue was undisputed. The plaintiff in that case brought claims against HomeAway that track Mr. Arnold's, and she objected to arbitrating for the same reasons as he did. The district court—in fact, the same district judge—applied the law of state where the plaintiff's billing address was located, Kentucky, to that plaintiff's illusoriness challenge and compelled arbitration. *Seim v. HomeAway, Inc.*, Case No. 1:16-cv-00479-YL, Dkt. No. 30 (W.D. Tex. Jan. 18, 2017).

plied covenant of good faith and fair dealing. *See, e.g., Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1033 (9th Cir. 2016) (collecting cases). Modifications made in good faith are enforceable, whereas modifications made in bath faith are not. Modification powers aren't inherently suspect, so under California law, Mr. Arnold's challenge to arbitration fails as a matter of law.[3]

## III.   THE FAA PREEMPTS STATE-LAW RULES THAT INVALIDATE ARBITRATION AGREEMENTS, BUT NOT OTHER CONTRACTS, THAT CAN BE UNILATERALLY MODIFIED.

Assuming this Court finds an arbitrator needn't resolve Mr. Arnold's challenge, and applies Texas law, this Court will confront a question of first impression. While this Court has previously invalidated modifiable arbitration agreements as illusory and unenforceable, the Court never has decided whether that rule is consistent with the FAA. It isn't, just as no rule that uniquely or disproportionately applies to arbitration agreements is consistent with the FAA.

---

3   Absent an effective contractual choice-of-law provision, Texas applies the "most significant relationship" test to resolve which state's laws apply to contract disputes. That is a heavily fact dependent inquiry, on which the district court ruled without the benefit of discovery. ROA.287–89. Thus, at the very least, if this Court disagrees that the contractual choice-of-law provision selects California law, the district court's order should be vacated and this case remanded to allow the parties to conduct necessary discovery and fully brief choice-of-law under the "most significant relationship" test.

### A.  THE FAA PREEMPTS STATE-LAW RULES THAT ARE HOSTILE TO ARBITRATION.

The whole point of the FAA is to treat arbitration agreements the same as other contracts. Arbitration agreements are "valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract.*" 9 U.S.C. § 2 (emphasis added). "This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996)). States cannot create, and courts cannot apply, "*arbitration-specific* rules or defenses." *Gross v. GGNSC Southaven, LLC*, 817 F.3d 169, 177 (5th Cir. 2016) (emphasis added).

That's not all the FAA preempts. Hostility to arbitration runs deep and can lurk beneath the surface of even "nominally neutral rules." *Id.* at 178. A state-law rule, though seemingly an application of a general rule of contract law, is preempted when, "in practice," it "disproportionately impact[s] arbitration agreements." *Id.* States cannot hold arbitration agreements to a higher standard, nor can they apply rules that are fundamentally in tension with the federal preference for arbitration.

### B.    THE RULE APPLIED BY THE DISTRICT COURT IS PREEMPTED.

The district court invalidated HomeAway's arbitration agreement because HomeAway potentially could modify it by posting changes online. ROA.290. The FAA preempts that rule of decision, both because it applies disproportionately to arbitration agreements and because it holds them to a higher standard than other contracts.

The rule of decision the district court applied traces back to *Morrison v. Amway Corp.*, 517 F.3d 248 (5th Cir. 2008), where the Court held one party's promise to arbitrate was illusory because that party had unlimited, unilateral authority to modify the parties' arbitration agreement. *See id.* at 254. En route to that holding, the Court discussed several state-court decisions—*In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002), *J.M. Davidson Inc. v. Webster*, 128 S.W.3d 223 (Tex. 2003), and *In re AdvancePCS Health L.P.*, 172 S.W.3d 603 (Tex. 2003)—where the Texas Supreme Court *rejected* illusoriness challenges and *enforced* arbitration agreements despite one party's modification authority. *Morrison* distinguished those decisions and concluded that, in Texas, an arbitration agreement is unenforceable if one party, without notice, can modify it retroactively, *i.e.*, "as to disputes which had arisen and of which [the party] had notice prior to" modification. *Morrison*, 517 F.3d at 257.

After *Morrison*, the Texas Supreme Court continues upholding arbitration agreements against illusoriness challenges, but this Court keeps invalidating them. *Compare In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419 (Tex. 2010), *and In re 24R, Inc.*, 324 S.W.3d 564 (Tex. 2010), *with Carey v. 24 Hour Fitness, Inc.*, 669 F.3d 202 (5th Cir. 2012). As this Court sees Texas law, unless a party's modification authority *expressly* forbids retroactive modification, the mere possibility of retroactive modification invalidates the entire agreement. *See Carey*, 669 F.3d at 206–07 (affirming that "silence about the possible retroactive application of amendments to the arbitration policy" is "interpreted to allow amendments to apply retroactively"). Under this Court's decisions, arbitration agreements subject to modification are presumptively unenforceable.

Almost a decade has elapsed since *Morrison*, yet this Court never has considered whether *Morrison*'s rule comports with the FAA. A striking fact about the rule is that it applies only to arbitration agreements. This Court hasn't applied it to any other type of contract; all of the distinctions the Court's precedents draw are *between* arbitration agreements—*e.g.*, between those that are retroactively modifiable and those that are not. *See Nelson v. Watch House Int'l*, 815 F.3d 190, 194–95 (5th Cir. 2016) (threading the *Morrison* rule through a patchwork of Texas and Fifth Circuit cases addressing different arbitration agreements). However, when all or "most of [a] rule's applications have been to" arbitration agreements, that shows the rule uniquely or disproportionately

impacts arbitration agreements in the way the FAA and *Concepcion* prohibit. *Mortensen v. Bresnan Commc'ns*, 722 F.3d 1151, 1161 (9th Cir. 2013); *cf. Lefoldt*, 2017 WL 1326241, at *9 ("An examination of Mississippi law reveals that Mississippi has applied the [rule at issue] to a wide variety of contract provisions; its applicability is not limited to arbitration provisions.").

*Morrison*'s rule can't be phrased in an arbitration-neutral way. Take the latest articulation of the rule, the 3-part *Lizalde* test: "retaining termination power does not make an agreement illusory so long as that power 1) extends only to prospective claims, 2) applies equally to both the employer's and employee's claims, and 3) so long as advance notice to the employee is required before termination is effective." *Lizalde v. Vista Quality Markets*, 746 F.3d 222, 226 (5th Cir. 2014). By its terms, the *Lizalde* test is limited to agreements concerning "claims." Hypothetically, the test could apply to agreements concerning *litigation of claims*, not just agreements concerning *arbitration of claims*, but *Concepcion* rejects using that very hypothetical application as an excuse for a rule that has "a disproportionate impact on arbitration agreements." *Concepcion*, 563 U.S. at 342.

*Morrison* presumes that modification powers are retroactive. That's not a generally applicable presumption in Texas. The norm in Texas is that new contract laws and new contract-law judicial decisions are presumptively prospective. *See* Tex. Const. art. I, § 16; *Pollard v. Steffens*, 343 S.W.2d 234, 238 (Tex. 1961).

Given that context, one would expect a clearer indication from Texas courts for a presumption that contractual modification powers are retroactive.

There is no saving the *Morrison* rule as a mere application of the general rule that contracts must be supported by consideration. *Cf. Lizalde*, 746 F.3d at 225 (quoting *Mendivil v. Zanios Foods, Inc.*, 357 S.W.3d 827, 831 (Tex. App. 2012)). True, illusory promises are not consideration, but a promise that can be modified does not invalidate an agreement—*because other consideration might exist. In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010) ("When illusory promises are *all that support* a purported bilateral contract, there is ... no contract.") (emphasis added). A simple example would be where the party with authority to modify an arbitration agreement pays the other party for that authority. Even if that party's promise to arbitrate were illusory, his cash is real.

*Morrison* twists a rule for distinguishing between valid and invalid forms of consideration into a rule that makes retroactively modifiable arbitration agreements invalid and unenforceable *per se*. That's not a general rule of contract law. It's an arbitration-specific rule that disfavors arbitration agreements by making them extra-difficult to enforce.[4] The rule prevents a party from compelling arbi-

---

4   Indeed, a panel of this Court acknowledged that the *Morrison* rule was "arbitration-specific" and "not readily applicable to the enforceability of a release of liability agreement." *Ramirez v. 24 Hour Fitness, Inc.*, 549 F. App'x 262, 263 (5th Cir. 2013). That violates the FAA and *Concepcion*.

tration solely because that party conceivably could have avoided arbitration; the rule effectively forces the party to exercise its power to avoid arbitration when it doesn't want to. A rule with that effect is a rule that is hostile to arbitration. The FAA, therefore, preempts the *Morrison* rule.

## IV. THE ARBITRATION AGREEMENT IS ENFORCEABLE UNDER TEXAS'S GENERAL CONTRACT LAW.

There is a way this Court can avoid holding the *Morrison* rule preempted: the Court can hold that the *Morrison* rule does not invalidate a modifiable arbitration agreement *embedded within another, partially performed contract*. Since *Morrison*, Texas courts have unanimously held that modification powers *do not* render arbitration agreements illusory and unenforceable in that setting. This Court therefore is not bound to apply the *Morrison* rule to the facts of this case. *See, e.g.*, *FDIC v. Abraham*, 137 F.3d 264, 269 (5th Cir. 1998) (prior panel's *Erie* analysis is not controlling when inconsistent with "unanimous or near-unanimous holdings from several … of the intermediate appellate courts of the state in question").

Texas law isn't as hostile to arbitration as the *Morrison* rule suggests. Texas's general rule of contract law is that a modifiable promise can support a valid and binding contract when other consideration exists or when parties actually perform. So, when parties authorize one of them to modify their promises, yet

both parties proceed as initially promised, they form a unilateral contract. At most, that's what happened here, meaning the arbitration agreement in the Terms & Conditions is valid and enforceable.

Texas law on illusory promises tracks the Restatement (Second) of Contracts. One party's authority to modify or cancel an agreement technically makes his promises illusory. *See* Restatement (Second) Contracts § 77, *cmt. a, illus. 2*. No contract is then formed, so neither side can sue the other for breach, *i.e.*, for enforcement of the contract.

But that's not the end of it.

On the contrary, as this Court recognized in a non-arbitration case, "[t]he presence of an illusory promise does not destroy the possibility of a contract" under Texas law. *Olander v. Compass Bank*, 363 F.3d 560, 565 (5th Cir. 2004). There might be other consideration exchanged—like cash or a non-illusory promise. Moreover, though a modifiable promise might defeat certain *bilateral* contracts, it's no obstacle to a *unilateral* contract. "Almost all unilateral contracts begin as illusory promises," and "a non-illusory promise [can] salvage an otherwise ineffective bilateral contract by transforming it into a unilateral contract, enforceable upon performance." *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302–03 (Tex. 2009) (citing CORBIN ON CONTRACTS § 6.2

(1995)).[5] A non-illusory promise can serve as an offer, which the illusory promisor can accept by performance. *See Olander*, 363 F.3d at 565 (discussing *Light v. Centel Cellular Co.*, 883 S.W.2d 642 (Tex. 1994)).

Many unilateral-contract cases in Texas involve at-will employment, but some involve arbitration agreements. That's a sign these are rules of general applicability, not rules that uniquely or disproportionately apply to arbitration agreements. One arbitration case, in fact, relies on multiple non-arbitration cases involving at-will employment as laying down the general rules for enforceability of all contracts subject to unilateral modification. *See In re 24R*, 324 S.W.3d at 566–67 (discussing *Vanegas* and *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844 (Tex. 2009)).

The upshot is this: an illusory promise (like a modifiable agreement to arbitrate) can make an enforceable agreement when part of a broader, enforceable arrangement, like when the parties have exchanged actual consideration (*e.g.*, made other, non-illusory promises) or begun performance. Thus, Texas courts confronting a retroactively modifiable arbitration agreement don't invalidate it outright; they ask whether the parties have exchanged other consideration—

---

5   *See also* CORBIN ON CONTRACTS § 6.12 ("If a promisor effectively reserves the power to terminate at any time without notice, the promise seems to be unenforceable, at least as long as there has been no performance by the other party to the agreement.").

especially other, non-illusory promises—or have begun performance. A modifiable arbitration agreement embedded within a broader contract is not illusory and is enforceable, whereas a modifiable arbitration agreement is illusory if standalone. *See, e.g., In re AdvancePCS*, 172 S.W.3d at 607 ("In the context of stand-alone arbitration agreements, binding promises are required on both sides as they are the only consideration rendered to create a contract. But when an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration."); *see also In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006).

By definition, a standalone arbitration agreement lacks a broader arrangement—that's why the agreement *stands alone*—so in that unique context, "binding promises are required on both sides as they are the only consideration rendered to create a contract." *In re AdvancePCS*, 172 S.W.3d at 607. Only in that unique context is the prospect of unilateral modification enough to invalidate an arbitration agreement, not because of hostility to arbitration, but because no other consideration exists and because the illusory promisor cannot logically "perform" on the other's unilateral offer to arbitrate. (A standalone, modifiable arbitration agreement is therefore like an illusory promise to buy widgets from a manufacturer next year: no other consideration exists, and the illusory promisor cannot logically perform on the manufacturer's unilateral offer before the year is up.)

Since *Morrison*, Texas courts have steadfastly recognized the distinction be-

tween standalone and embedded arbitration agreements, holding that modifica-

tion powers may render only the former illusory. *See Amateur Athletic Union,*

*Inc. v. Bray*, 499 S.W.3d 96, 106–07 (Tex. App. 2016) (modification power did

not render embedded arbitration agreement illusory because "the remainder of

the underlying contract … provides sufficient consideration and mutuality of

obligation for the arbitration agreement"); *Cleveland Constr. v. Levco Constr.*,

359 S.W.3d 843, 853 (Tex. App. 2012) (same); *Mendez v. New Bell Gen. Servs.*,

727 F. Supp. 2d 585, 594 (W.D. Tex. 2010) (same).[6] Texas courts have endorsed

---

6    The string of post-*Morrison* decisions following this logic and upholding
    modifiable arbitration agreements is so long that this footnote goes on to
    the next page. *See, e.g., Stride Staffing v. Holloway*, No. 05-14-00811,
    2015 WL 4554341, at *3 (Tex. App. July 29, 2015) (larger agreement that
    provided consideration for modifiable arbitration agreement); *Edwards v.*
    *Conn Appliances, Inc.*, No. 3:14-CV-3529-K, 2015 WL 1893107, at *6
    (N.D. Tex. Apr. 24, 2015) ("[T]his arbitration clause is not a stand-alone
    agreement, but is merely one provision contained within the rental
    agreement between these parties, and as such, the Agreement itself pro-
    vides the required consideration for the arbitration clause."); *Tanoury v.*
    *Symphony Serv. Corp.*, No. 12-1142, 2013 WL 705121, at *4 (N.D. Tex.
    Feb. 5, 2013) ("[T]he underlying agreement … provides the required
    consideration for the arbitration clause."); *Dorfman v. Max Int'l.*, No.
    05-10-00776-CV, 2011 WL 1680070, at *2 (Tex. App. May 5, 2011)
    (same); *Wynne v. Am. Exp. Co.*, No. 2:09-CV-00260, 2010 WL 3860362,
    at *6 (E.D. Tex. Sept. 30, 2010) ("[T]he underlying agreement can en-
    sure that the promise is not illusory."); *Obra Homes, Inc. v. Gonzalez*,
    No. 13-03-00644-CV, 2010 WL 2224662, at *11 (Tex. App. June 3, 2010);

(footnote continued on next page)

the *Morrison* rule *only as applied to standalone arbitration agreements. See
Henry & Sons Constr. v. Campos*, 510 S.W.3d 689, 693–95 (Tex. App. 2016)
(standalone agreement illusory); *Vista Quality Mkts. v. Lizalde*, 438 S.W.3d 114,
118–19 (Tex. App. 2014) (embedded agreement not illusory). The Eleventh Cir-
cuit has reached the same conclusion and spurned the *Morrison* rule as a misap-
plication of Texas law as applied to embedded arbitration agreements. *See Betts
v. SGE Mgmt.*, 402 F. App'x 475, 477–78 & n.2 (11th Cir. 2010) (per curiam)
("[T]o the extent *Morrison* stands for the proposition that illusory promises to
arbitrate can invalidate contracts otherwise supported by sufficient considera-
tion, we decline to adopt the Fifth Circuit's logic."). This Court should do the
same. *See FDIC*, 137 F.3d at 269.

    The arbitration agreement at issue here is not a standalone. It is part of the
Terms & Conditions and, indeed, a multi-year, multi-subscription relationship
between HomeAway and Mr. Arnold. Both HomeAway and Mr. Arnold actu-
ally performed in accordance with those Terms & Conditions. Most notably,
HomeAway listed Mr. Arnold's properties on it websites, and Mr. Arnold netted

---

*U.S. ex rel. D.R. Swindle Constr. v. Travelers Cas. & Sur.*, No. 7:08-CV-
00174-O, 2009 WL 1904852, at *2 (N.D. Tex. July 1, 2009) ("[T]he un-
derlying Subcontract Agreement provides sufficient consideration to
render the arbitration agreement enforceable"); *Gables Cent. Constr.,
Inc. v. Atrium Cos.*, No. 05-07-00438-CV, 2009 WL 824732, at *2 (Tex.
App. Mar. 31, 2009).

more than $11,000 from rentals through the websites. *See* ROA.281. That all being so, even if HomeAway's promise to arbitrate *by itself* were illusory, the parties' agreement to arbitrate is still enforceable.

# CONCLUSION

For three reasons, the district court's judgment should be reversed, and this Court should remand with instructions that the motion to compel arbitration be granted. *First*, Mr. Arnold's challenge must be arbitrated, both because the Terms & Conditions include a valid delegation clause, and because Mr. Arnold did not raise an arbitration-specific challenge. *Second*, California law governs the interpretation, validity, and enforceability of the Terms & Conditions. *Finally*, the court applied a variation of Texas law that is wrong and preempted.

Respectfully submitted,

/s/ Bryan Killian

SCOTT DOUGLASS & MCCONNICO LLP
Jane M.N. Webre
  Texas Bar No. 21050060
David D. Shank
  Texas Bar No. 24075056
303 Colorado St., Suite 2400
Austin, Tex. 78701
T: 512-495-6300

MORGAN, LEWIS & BOCKIUS LLP
Bryan Killian
Stephanie Schuster
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
T: 202-739-3000

J. Warren Rissier
300 South Grand Ave., 22nd Floor
Los Angeles, Cal. 90071
T: 213-612-2500

April 26, 2017

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I certify that BRIEF OF APPELLANT meets the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32.2 because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), it contains 6,819 words. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32.1, as well as the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).

/s/ Bryan Killian

Dated: April 26, 2017

# CERTIFICATE OF SERVICE

I certify that, on this April 26, 2017, I electronically filed BRIEF OF APPELLANT with the Clerk for the United States Court of Appeals for the Fifth Circuit. I used the Court's CM/ECF system, which serves registered CM/ECF users. All attorneys in this case are registered CM/ECF users and were served accordingly.

/s/ Bryan Killian

Dated: April 26, 2017