CASE NO. 17-50088

IN THE

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### IVAN ARNOLD,
an individual, on behalf of himself
and all others similarly situated,

*Plaintiff - Appellee,*

v.

### HOMEAWAY, INCORPORATED,

*Defendant - Appellant.*

On appeal from the
United States District Court
for the Western District of Texas

## REPLY BRIEF

SCOTT DOUGLASS & MCCONNICO LLP
Jane M.N. Webre
 Texas Bar No. 21050060
David D. Shank
 Texas Bar No. 24075056
303 Colorado St., Suite 2400
Austin, Tex. 78701
T: 512-495-6300

MORGAN, LEWIS & BOCKIUS LLP
Bryan Killian
Stephanie Schuster
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
T: 202-739-3000

J. Warren Rissier
300 South Grand Ave., 22nd Floor
Los Angeles, Cal. 90071
T: 213-612-2500

June 30, 2017

# CONTENTS

**1**  Introduction

**2**  Argument

**2**  I.  Mr. Arnold and HomeAway delegated arbitrability challenges to the arbitrator.

**6**  II.  Mr. Arnold challenges the validity of the April 2016 Terms & Conditions.

**9**  III. Mr. Arnold avoids California law only by changing the choice-of-law provision.

**10**  IV. Mr. Arnold offers no serious defense of the *Morrison* rule.

**14**  V.  Mr. Arnold's retreat to the September terms doesn't help him.

**17**  Conclusion

**18–19**  Certificates

# AUTHORITIES

## CASES

*Allstate Ins. Co. v. Toll Bros. Inc.,*
171 F. Supp. 3d 417
(E.D. Pa. 2016)............................3

*Archer & White Sales, Inc. v. Henry Schein, Inc.,* No. 2:12-CV-572-JRG, 2016 WL 7157421
(E.D. Tex. Dec. 7, 2016)..............5

*AT&T Technologies Inc. v. Commc'n Workers of America,*
475 U.S. 643 (1986) .....................2

*AT&T Mobility LLC v. Concepcion,*
563 U.S. 333 (2011) ...................13

*BossCorp, Inc. v. Donegal, Inc.,*
370 S.W.3d 68
(Tex. App. 2012) ........................5

*Bradley v. Harris Research, Inc.,*
275 F.3d 884 (9th Cir. 2001).....14

*Brennan v. Opus Bk.,*
796 F.3d 1125 (9th Cir. 2015).....4

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.,*
622 F.3d 996 (9th Cir. 2010).......7

*Burlington Res. Oil & Gas Co.,*
249 S.W.3d 34
(Tex. App. 2007) ........................3

*Coffman v. Provost * Umprhey Law Firm LLP,* 161 F. Supp. 2d 720
(E.D. Tex. 2001) ........................16

*Cooper v. WestEnd Cap. Mgmt.,*
832 F.3d 534 (5th Cir. 2016).......4

*Douglas v. Regions Bk.,*
757 F.3d 460 (5th Cir. 2014).......5

*Fallo v. High-Tech Inst.,*
559 F.3d 874 (8th Cir. 2009).......3

*FDIC v. Abraham,*
137 F.3d 264 (5th Cir. 1998) ....12

*First Options, Inc. v. Kaplan,*
514 U.S. 938 (1995) .....................2

*G.M. Corp. v. Pamela Equities Corp.,* 146 F.3d 242
(5th Cir. 1998)..........................16

*Haddock v. Quinn,*
287 S.W.3d 158
(Tex. App. 2009) ........................3

AUTHORITIES                                                          *iii*

*Henson v. Santander Consumer USA, Inc.*, No. 16-349,
— S. Ct. —, 2017 WL 2507342 (June 12, 2017) ..........................10

*In re AdvancePCS Health, L.P.*,
172 S.W.3d 603, 607 (2005) ......11

*Jaworowski v. Ciasulli*,
490 F.3d 331 (3d Cir. 2007) ......12

*J.M. Davidson Inc. v. Webster*,
128 S.W.3d 223 (Tex. 2003) ..... 11

*Kindred Nursing Ctrs. LP v. Clark*,
137 S. Ct. 1421 (2017) ...........8, 14

*Lefoldt for Natchez Reg'l Med. Ctr. Liquidation Tr. v. Horner, LLP*,
853 F.3d 804 (5th Cir. 2017).....14

*Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898
(5th Cir. 2005) ..........................14

*Morrison v. Amway*,
517 F.3d 248 (5th Cir. 2008).........

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)......................16

*Nat'l Union Fire Ins. Co. v. Circle, Inc.*, 915 F.2d 986
(5th Cir. 1990)..........................15

*Nerium Int'l LLC v. Kum Sun*,
No. 05-13-00427-CV, 2014 WL 1789882 (Tex. App. 2014)........13

*Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*,
687 F.3d 671 (5th Cir. 2012).......2

*Pilon v. Univ. of Minn.*,
710 F.2d 466 (8th Cir. 1983).....15

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) ....................6

*Rent-A-Center, W. Inc. v. Jackson*,
561 U.S. 63 (2010)....................3, 5

*Royston, Rayzor, Vickery, & Williams LLP v. Lopez*,
467 s.w.3d 494 (Tex. 2015).......13

*S.C. Maxwell Family P'ship v. Kent*, 472 s.w.3d 341
(Tex. App. 2015) .......................13

*Seim v. HomeAway, Inc.*,
No. 17-50102 (5th Cir.) ...........15

*Stauth v. Nat'l Union Fire Ins. Co.*,
236 F.3d 1260
(10th Cir. 2001).........................12

*Vandenbark v. Owens–Illinois Glass Co.*,
311 U.S.. 538 (1941) ..................12

# INTRODUCTION

To prevail, Mr. Arnold has to show that (1) the delegation clause is invalid; (2) his challenge to the arbitration agreement doesn't undermine the entire Terms & Conditions; (3) Texas law applies; (4) Texas law invalidates a unilaterally-modifiable arbitration agreement embedded within a broader agreement, even though the parties have been complying with it and even though Mr. Arnold has received consideration; and (5) that take on Texas law—the *Morrison* rule—isn't preempted. That's a lot to accomplish, yet Mr. Arnold's brief is evasive. It avoids most of HomeAway's arguments, and by proposing an alternative argument for affirmance, he invites the Court to avoid them as well. As explained below, none of Mr. Arnold's dodges succeeds.

Arbitration is unavoidable, and Mr. Arnold's arguments prove it. When arguing that the *Morrison* rule is not preempted, he insists the rule does not "appl[y] uniquely or disproportionately to arbitration agreements." Arnold Br. 28. Yet, when arguing that the *Prima Paint* rule does not require him to arbitrate his challenge, Mr. Arnold characterizes the *Morrison* rule as grounded on an assumption that a unilateral modification power "operates with peculiar and special effect" on arbitration agreements. *Id.* at 20. At most, one of those arguments can be true (actually, both are false). Since both can't be true, Mr. Arnold has to arbitrate.

# ARGUMENT

## I. MR. ARNOLD AND HOMEAWAY DELEGATED ARBITRABILITY CHALLENGES TO THE ARBITRATOR.

Expressly incorporating a set of arbitration rules, one of which delegates arbitrability disputes to an arbitrator, is clear and unmistakable evidence that parties agreed to arbitrate gateway questions of arbitrability. This express-incorporation rule is settled. This Court follows it; "most of [this Court's] sister circuits" do, too; and even "Texas appellate courts have adopted the same approach." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 & 675 n.2 (5th Cir. 2012). Mr. Arnold's many attempts to avoid the express-incorporation rule lack merit.

Mr. Arnold urges the Court to ignore its own precedents on the express-incorporation rule and follow Texas decisions because, as he contends, state law controls (Arnold Br. 15 n.4). The clear-and-unmistakable standard is a requirement of *federal* law. It originated in *AT&T Technologies Inc. v. Communication Workers of America*, 475 U.S. 643 (1986), as an "inexorabl[e]" corollary of federal arbitration law. *Id.* at 649. A decade later, the Supreme Court explained that the clear-and-unmistakable standard is an "important *qualification*" to the general rule that "state-law principles … govern the formation of contracts." *First Options, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (emphasis added). And, indeed, state-court opinions Mr. Arnold cites don't rest on policies or principles of state

law; they merely try, and sometimes fail, to implement the federal standard. *See, e.g.*, *Haddock v. Quinn*, 287 S.W.3d 158, 175 (Tex. App. 2009) (surveying state and federal decisions); *Burlington Res. Oil & Gas Co.*, 249 S.W.3d 34, 42 (Tex. App. 2007) (same).[1]

Seizing on a single, out-of-circuit district court opinion that purported to survey and synthesize appellate precedents applying the express-incorporation rule (Arnold Br. 18), Mr. Arnold argues that the rule applies only to "organizations, not unsophisticated individuals." *Allstate Ins. Co. v. Toll Bros. Inc.*, 171 F. Supp. 3d 417, 427 (E.D. Pa. 2016). The district court's synthesis was flawed in 2016 and has become even more flawed since. Seven years before that district court opinion, in a widely followed decision, the Eighth Circuit applied the express-incorporation rule to an ordinary individual. *See Fallo v. High-Tech Inst.,*

---

1   *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), casts doubt on the vitality of the clear-and-unmistakable standard as a matter of federal law. The Court's holding that delegation clauses are severable arbitration agreements, protected by the FAA like any other arbitration agreement, is hard to square with the notion that delegation clauses are enforceable only when they are clear and unmistakable—a heightened standard that doesn't apply to arbitration agreements (or contracts) generally. The four dissenting Justices in *Rent-A-Center*, in fact, disagreed with the majority on this very ground; in their view, the clear-and-unmistakable standard signaled that delegation clauses shouldn't be treated as severable arbitration agreements. *See id.* at 78–85 (Stevens, J., dissenting). This Court need not resolve that tension in this case because binding circuit precedents already hold that the express-incorporation rule satisfies the clear-and-unmistakable standard.

559 F.3d 874 (8th Cir. 2009). One year before that district court opinion, the Ninth Circuit opined that having separate express-incorporation rules for sophisticated and unsophisticated parties makes no sense. *See Brennan v. Opus Bk.*, 796 F.3d 1125, 1130 (9th Cir. 2015). And five months after that district court opinion, this Court applied the express-incorporation rule to another ordinary individual. *See Cooper v. WestEnd Capital Mgmt.*, 832 F.3d 534, 546 (5th Cir. 2016). There is consensus among the precedents—the express-incorporation rule applies to everyone—and Mr. Arnold's effort to cast himself as a hapless and unsophisticated consumer cannot shield him from the rule.[2]

Mr. Arnold finally contends that an express incorporation of AAA rules is clearly and unmistakably a delegation clause only when parties, in their broader arbitration agreement, otherwise agree to arbitrate *all claims*. In his view, when a broader arbitration agreement includes exceptions, express incorporation of AAA rules somehow ceases to be a delegation clause. *See* Arnold Br. 17, 19. Mr. Arnold's position flouts fundamental FAA principles. As *Rent-A-Center*

---

2   Mr. Arnold's assertion that Mr. Cooper was a "sophisticated investor" (Arnold Br. 18) is just guessing. The *Cooper* opinion says nothing about Mr. Cooper's education, or his experience, or any other factor that ordinarily could bear upon the level of someone's sophistication. All this Court noted about Mr. Cooper (besides his alleged misdeeds) was his stint as a manager of an investment-advice business. If that's all it takes to be sophisticated, then Mr. Arnold—who is a manager of rental properties—is surely sophisticated, as well.

teaches, a delegation clause is a severable arbitration agreement and cannot be invalidated or judicially overridden because of some defect or variation found in "the rest of the agreement to arbitrate claims." *Rent-A-Center*, 561 U.S. at 71. Thus, whether a broader arbitration agreement covers all claims or some claims does not—and cannot—change the meaning or scope of a separate agreement to arbitrate arbitrability disputes.

Moreover, the decisions Mr. Arnold cites do not support his sweeping rule. Those courts in those cases declined to compel parties to arbitrate arbitrability, notwithstanding a delegation clause, because the plaintiffs' claims *clearly fit within an exception* to the broader arbitration agreement. *See, e.g., BossCorp, Inc. v. Donegal, Inc.*, 370 S.W.3d 68, 76 (Tex. App. 2012) ("[T]he parties' dispute over arbitrability specifically falls within those carve-outs."); *Archer & White Sales, Inc. v. Henry Schein, Inc.*, No. 2:12-CV-572-JRG, 2016 WL 7157421, at *7 (E.D. Tex. Dec. 7, 2016) (declining to compel arbitration because the "action falls squarely within the clause excluding actions like this from arbitration"). Those results are in line with an equitable doctrine adopted by this Court that it is unfair to enforce even clear and unmistakable delegation clauses when one party has concocted a "wholly groundless" arbitrability dispute. *Douglas v. Regions Bk.*, 757 F.3d 460, 464 (5th Cir. 2014). This Court equitably refuses to enforce delegation clauses when the party demanding arbitration of an arbitrability dis-

pute appears to be doing so only to delay the proceedings or harass the opposing party.

That equitable doctrine is rarely employed, and it can't be employed here. The arbitrability dispute HomeAway wants to arbitrate is Mr. Arnold's own challenge to the validity of the broader arbitration agreement and the entire Terms & Conditions. His challenge doesn't fit within the only exception to the broader arbitration agreement—the exception that authorizes him to go to small-claims court *if he chooses*. *See* ROA.165–66.

The arbitration agreement's meaning is plain, and Mr. Arnold's challenge to the validity of the arbitration agreement must be arbitrated.

## II.    Mr. arnold challenges the validity of the April 2016 terms & conditions.

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967), holds that a party cannot avoid arbitration by challenging an arbitration agreement on a theory that applies to the entire contract. *See id.* at 403–04. Courts resolve arbitration-specific defenses; arbitrators resolve everything else. *Id.* Consistently, in all his briefs opposing arbitration, both in the district court and on appeal, Mr. Arnold has not challenged the arbitration agreement specifically. On the contrary, Mr. Arnold claims he does not have to arbitrate because of "HomeAway's ability to unilaterally change its *Terms and Conditions*." Ar-

nold Br. 20 (emphasis added); *see id.* at 1 (admitting he's attacking HomeAway's "unilateral right to change those Terms and Conditions, *including the arbitration clause contained therein*") (emphasis added); *see also id.* at 22 (admitting he's attacking HomeAway's reservation "to itself [of] the right to amend *those Terms and Conditions* at any time and without restriction") (emphasis added). These concessions aren't accidental slips of the pen: the modification authority that Mr. Arnold attacks applies to the entire Terms & Conditions; that authority isn't limited to the arbitration agreement.

Mr. Arnold downplays the concessions in *his briefs*, arguing that *his complaint* does not challenge his contract with HomeAway. *See* Arnold Br. 20. That's a feint—unsurprisingly, Mr. Arnold's complaint totally ignores his arbitration obligations. In most cases, what matters is how an arbitration opponent frames his challenge, not in his complaint, but in "the pleadings resisting a motion to compel arbitration." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010).

Mr. Arnold believes he avoids *Prima Paint* because HomeAway's unilateral modification authority "operates with peculiar and special effect on the arbitration clause." Arnold Br. 20. In his view, HomeAway can use its authority to modify the arbitration agreement "retroactively" but other provisions "only prospectively." *Id.* From where Mr. Arnold divines that distinction is a mystery. The Terms & Conditions make no such distinction, and he cites nothing else. If

the Court is going to invalidate the arbitration agreement because of a hypothetical possibility that HomeAway could retroactively modify the arbitration agreement to relieve HomeAway of its arbitration obligation, then the Court surely can hypothesize that HomeAway could retroactively modify the Terms & Conditions to increase Mr. Arnold's subscriber fees, for example. In other words, Mr. Arnold's challenge really does attack the entire Terms & Conditions, so that challenge must be arbitrated, per *Prima Paint*.

Mr. Arnold's attempt to avoid *Prima Paint* exposes a fundamental dilemma in his case. If, as he claims, Texas law invalidates arbitration agreements subject to a unilateral modification power because such power has a "peculiar and special effect on the arbitration clause," (Arnold Br. 20) the FAA preempts that defense as one that is impermissibly hostile to arbitration. A rule that "rel[ies] on the uniqueness of an agreement to arbitrate as [its] basis … violate[s] the FAA." *Kindred Nursing Ctrs. LP v. Clark*, 137 S. Ct. 1421, 1426 (2017) (alteration in original); *see id.* ("The FAA … preempts any state rule discriminating on its face against arbitration …. And not only that: The Act also displaces any rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements."). Yet if, as Mr. Arnold also claims, Texas law generally invalidates any contract subject to a unilateral modification power, *Prima Paint* requires arbitrating his defense because it's not arbitration-specific but necessarily calls into question the validity

of the entire Terms & Conditions. Mr. Arnold can't have it both ways; he has to arbitrate.

## III. Mr. arnold avoids california law only by changing the choice-of-law provision.

Mr. Arnold doesn't directly respond to HomeAway's argument about the choice-of-law provision in the Terms & Conditions. His responses all assume that the choice-of-law provision governs "*disputes*" or the entire "*relationship between Arnold and HomeAway.*" Arnold Br. 8 (emphases added); *see, e.g., id.* (provision dictates the laws under which "disputes with HomeAway will be resolved"); *id.* (chosen law depends on the subject-matter of "the dispute at hand"); *id.* (provision does select state law to "control this action"). But the sole subject of the choice-of-law provision is *the Terms & Conditions*: "*These Terms are governed by* the Federal Arbitration Act, federal arbitration law, and for reservations made by U.S. residents, the laws of the state in which your billing address is located." ROA.168–69 (emphasis added). So, no matter which state's laws might apply to Mr. Arnold's underlying claims against HomeAway, the choice-of-law provision dictates that California law applies to his challenge to the validity of the arbitration agreement.

Travelers aren't the only people who use HomeAway's websites to make reservations, as Mr. Arnold assumes. *See* Arnold Br. 8–11. A "reservation" is a

transaction that "both the traveler *and member* accept." ROA.157 (emphasis added). Any member who, like Mr. Arnold, has a U.S. billing address thus has a state law that governs his or her Terms & Conditions.

Even on a different reading of the choice-of-law provision, it still selects California law. *See* HomeAway Br. 19. Mr. Arnold's claims about his *"subscription to HomeAway's websites"* (Arnold Br. 10) are necessarily claims about *reservations*—the reservations he expected his subscription to generate. Mr. Arnold contends that the past participle "made" limits the choice-of-law to disputes about reservations made in the past. But "[p]ast participles … are routinely used as adjectives to describe the present state of a thing." *Henson v. Santander Consumer USA, Inc.*, No. 16-349, — S. Ct. —, 2017 WL 2507342, at *3 (June 12, 2017). So too here: the choice-of-law provision doesn't distinguish between reservations made in the past and reservations made in the future. So long as Mr. Arnold made reservations—he did—California law applies to his dispute with HomeAway.

## IV.  MR. ARNOLD OFFERS NO SERIOUS DEFENSE OF THE *MORRISON* RULE.

HomeAway explained at length why this Circuit's *Morrison* rule doesn't accurately reflect Texas law and is preempted. *See* HomeAway Br. 20–32. Mr. Ar-

nold responds in barely two pages. *See* Arnold Br. 27–29. He ignores almost every point HomeAway argued—an implicit concession those points are sound.

For instance, citing a long list of state-court decisions, buttressed by undisputed principles of blackletter contract law, HomeAway showed that, "[s]ince *Morrison*, Texas courts have unanimously held that modification powers *do not* render arbitration agreements illusory and unenforceable" when the agreements are "*embedded within another, partially performed contract.*" HomeAway Br. 26. Mr. Arnold's rejoinder is a complete *non sequitur*. He contends that a single state-court decision from *before Morrison*—not *since Morrison*—applied a proto-*Morrison* rule to "an arbitration clause contained within a document that controlled multiple issues apart from arbitration." Arnold Br. 28.

That lone pre-*Morrison* decision, *J.M. Davidson Inc. v. Webster*, 128 S.W.3d 223 (Tex. 2003), doesn't help his cause. Contrary to Mr. Arnold's characterization of the case as involving an embedded arbitration agreement, the Texas Supreme Court characterized *J.M. Davidson* as an example of a case involving a "stand-alone arbitration agreement[]." *See In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 607 (2005). Plus, as HomeAway explained, *J.M. Davidson rejected* an illusoriness challenge to the arbitration agreement, so the decision is not proof that Texas invalidates unilaterally modifiable arbitration agreements embedded within broader contracts. *See* HomeAway Br. 22.

*Morrison*'s assessment of Texas law isn't written in stone. If Texas changes its law, or if it becomes clear that this Court's best guess of Texas law was wrong, then this Court is bound to follow Texas law as it stands today. *See FDIC v. Abraham*, 137 F.3d 264, 269 (5th Cir. 1998); *see also Vandenbark v. Owens–Illinois Glass Co.*, 311 U.S.. 538, 543 (1941) ("appellate tribunals … should conform their orders to the state law as of the time of the entry"); *see, e.g., Jaworowski v. Ciasulli*, 490 F.3d 331 (3d Cir. 2007) (revisiting circuit precedent after state courts criticized it for misstating state law); *Stauth v. Nat'l Union Fire Ins. Co.*, 236 F.3d 1260, 1267 (10th Cir. 2001) (same). That is HomeAway's point—it is now clear that Texas law doesn't invalidate embedded arbitration agreements on account of one party's unilateral modification power. *See* HomeAway Br. 29–32. Mr. Arnold doesn't address any of the post-*Morrison* state-court precedents.

Similarly, HomeAway showed how the *Morrison* rule applies only to arbitration agreements and is premised on assumptions that are hostile to arbitration. *See* HomeAway Br. 23–26. Mr. Arnold tries to spin the *Morrison* rule as a straightforward application of general contract-law principles. *See* Arnold Br. 29. *Concepcion* rebuffed the same move when the Concepcions tried to spin California's anti-arbitration rule as a straightforward application of unconscionability principles. "[T]he inquiry becomes more complex when a doctrine normally thought to be generally applicable … is alleged to have been applied in a

fashion that disfavors arbitration." *AT&T Mobility* LLC *v. Concepcion*, 563 U.S. 333, 341 (2011).

The three cases Mr. Arnold cites don't show general applicability of the *Morrison* rule, and they don't disprove HomeAway's contention that the *Morrison* rule has "a disproportionate impact on arbitration agreements." *Id.* at 342. Two were arbitration cases. One said nothing about unilateral modification powers (*S.C. Maxwell Family P'ship v. Kent*, 472 S.W.3d 341 (Tex. App. 2015)), and the other mentioned unilateral modification powers simply to note that neither party had such power (*Royston, Rayzor, Vickery, & Williams LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2015)).

The only other case Mr. Arnold cites—*Nerium International* LLC *v. Kum Sun*, No. 05-13-00427-CV, 2014 WL 1789882 (Tex. App. 2014)—was not an arbitration case and is barely relevant. The question in *Nerium* was personal jurisdiction, which the trial court adjudicated after granting special appearances. The plaintiff lost—the defendants had no minimum contacts with Texas—and the plaintiff's appeal attacked the trial court's initial decision to grant special appearances. The plaintiff argued a forum-selection clause precluded the defendants from making special appearances. After holding that the plaintiff waived his appellate arguments about the forum-selection clause, the appellate court nevertheless opined that the clause was invalid because the plaintiff could unilaterally modify it retroactively. *See id.* at *4.

*Nerium* doesn't prove that Texas law applies the *Morrison* rule to a "wide variety" of contracts. *Lefoldt for Natchez Reg'l Med. Ctr. Liquidation Tr. v. Horner, LLP*, 853 F.3d 804, 819 (5th Cir. 2017). Even if its discussion of the *Morrison* rule weren't gratuitous, a state-law rule that applies only to arbitration agreements and forum-selection clauses still isn't a generally applicable rule. *See Bradley v. Harris Research, Inc.*, 275 F.3d 884, 890 (9th Cir. 2001); *see also Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 901 (5th Cir. 2005) ("An arbitration clause is a subset of a forum selection clause."). A rule that invalidates only arbitration agreements and forum-selection clauses is a rule that functions to force dispute resolution in a particular *judicial* forum. "Such a rule is too tailor-made to arbitration agreements—subjecting them, by virtue of their defining trait, to uncommon barriers—to survive the FAA's edict against singling out those contracts for disfavored treatment." *Kindred*, 137 S. Ct. at 1427.

## V.  MR. ARNOLD'S RETREAT TO THE SEPTEMBER TERMS DOESN'T HELP HIM.

Mr. Arnold has two HomeAway accounts tied to different email addresses. He claims one account is subject to the April 2016 Terms & Conditions and its arbitration provisions. He claims the other is subject to the September 2015 Terms & Conditions, which has no arbitration provisions. On that distinction

Mr. Arnold builds an alternative argument in support of the district court's judgment: that he has freedom to decide to arbitrate (under the April 2016 Terms & Conditions) or not (under the September 2015 Terms & Conditions).[3]

Mr. Arnold is wrong. HomeAway contracts with humans, not email addresses. And the arbitration agreement in the April 2016 Terms & Conditions covers claims, not accounts. Mr. Arnold agreed to arbitrate "any and all Claims" arising between him and HomeAway. "Any and all" are far-reaching terms, which together plainly mean "every." *See, e.g., Nat'l Union Fire Ins. Co. v. Circle, Inc.*, 915 F.2d 986, 989 (5th Cir. 1990) (finding the phrase "any and all … claims" to be "clear and explicit language"); *Pilon v. Univ. of Minn.*, 710 F.2d 466, 467–68 (8th Cir. 1983) (holding that a general release of "any and all" claims "is clear and leaves no doubt that all claims potentially held by [the plaintiff] are waived"). So, too, for the agreement's definition of "Claims": "any disputes or claims relating in any way to the Site, any dealings with our customer experience agents, any services or products provided, any representations made by us, or our Privacy Policy." ROA.165. And to make the broad scope obvious, the agreement expressly states that it covers "any Claims that arose before [Mr.

---

3   Mr. Arnold's alternative argument is a piece of an argument raised by the appellant in the related appeal, *Seim v. HomeAway, Inc.*, No. 17-50102 (5th Cir.). Like Mr. Arnold, Ms. Seim contends that she can limit her agreement to arbitrate to particular accounts.

Arnold] accepted the[] Terms, regardless of whether prior versions of the Terms required arbitration." *Id.*

The claims Mr. Arnold asserts here fall within the agreement's broad scope. There is no express or implied limitation in the arbitration agreement that restricts arbitration only to claims in connection with particular accounts. (That distinguishes *Coffman v. Provost * Umprhey Law Firm LLP*, 161 F. Supp. 2d 720 (E.D. Tex. 2001), where the "narrow" arbitration agreement was expressly limited to disputes "arising under" the later contract, *id.* at 725.) Mr. Arnold raises no plausible reason to read the agreement differently. But even if he did, all doubts about the scope of an agreement to arbitrate must be resolved in favor of arbitration. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *G.M. Corp. v. Pamela Equities Corp.*, 146 F.3d 242, 251 (5th Cir. 1998).

# CONCLUSION

The district court's judgment should be reversed and remanded with direction to grant HomeAway's motion to compel arbitration.

Respectfully submitted,

s/ Bryan Killian

| | |
|---|---|
| SCOTT DOUGLASS & MCCONNICO LLP | MORGAN, LEWIS & BOCKIUS LLP |
| Jane M.N. Webre | Bryan Killian |
|   Texas Bar No. 21050060 | Stephanie Schuster |
| David D. Shank | 1111 Pennsylvania Ave., NW |
|   Texas Bar No. 24075056 | Washington, D.C. 20004 |
| 303 Colorado St., Suite 2400 | T: 202-739-3000 |
| Austin, Tex. 78701 | |
| T: 512-495-6300 | J. Warren Rissier |
| | 300 South Grand Ave., 22nd Floor |
| | Los Angeles, Cal. 90071 |
| | T: 213-612-2500 |

June 30, 2017

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I certify that REPLY BRIEF meets the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32.2 because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), it contains 3,651 words. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32.1, as well as the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).

s/ Bryan Killian

Dated: June 30, 2017

# CERTIFICATE OF SERVICE

I certify that, on this June 30, 2017, I electronically filed REPLY BRIEF with the Clerk for the United States Court of Appeals for the Fifth Circuit. I used the Court's CM/ECF system, which serves registered CM/ECF users. All attorneys in this case are registered CM/ECF users and were served accordingly.

s/ Bryan Killian

Dated: June 30, 2017